■ EDDIE BROWN, III, Respondent, v SEARS ROEBUCK AND CO., Appellant. [746 NYS2d 141]

Plaintiff was formerly employed as a sales associate in the

computer department of defendant Sears' store on Fordham Road in the Bronx. On September 18, 1996, plaintiff entered a transaction into a cash register for the sale of an Apple computer, charging it to the account number of a Sears credit card holder named Gwendolyn Taylor. Plaintiff's employee number appears on Sears' computer detail display of the receipt and he readily admits that he is the person who conducted the sale. Plaintiff claims he received a telephone order from a woman who identified herself as Gwendolyn Taylor. The computer receipt includes a notation that reads "Gwen Taylor/Freeman will [be] picking it [sic] up the Apple computer." Plaintiff denies having made this notation. In November 1996, Gwendolyn Taylor complained to Sears that she had not purchased the computer and had not authorized anyone else to purchase a computer using her credit card.

Around the same time, David Sankar, the Loss Prevention Manager at Sears, was investigating the conduct of another Sears employee, Al Freeman, a coworker of plaintiff's in the computer department, regarding merchandise returned without original receipts and the unauthorized use of a credit card belonging to another Sears customer. After Sankar reviewed the relevant documentation with his supervisors, Sears determined to have the matter reviewed by the police.

Sankar met with Detective Stangenberg and provided him with documentation concerning Freeman. During the meeting, Stangenberg inquired about an employee number on one of the receipts, and when advised it was plaintiff's, Stangenberg said he would need to speak to plaintiff and requested further information concerning the Gwendolyn Taylor transaction, including a statement from Ms. Taylor. According to Stangenberg, Sankar also told him that plaintiff and Freeman were "working together," and that he (Sankar) had seen plaintiff pick up the computer. Sankar denies making these two statements. Stangenberg then turned over the documentation provided by Sankar to Detective Lauler.

On March 9, 1997, Stangenberg came to the Sears store and arrested Al Freeman, charging him with multiple counts of larceny, possession of stolen property, and unlawful use of a credit card in a complaint signed by Sankar. Freeman pleaded guilty to the charges, none of which concerned the Gwendolyn Taylor transaction.

On March 11, 1997, Detective Lauler and another officer went to Sears to speak with plaintiff. Plaintiff agreed to accompany the officers to the precinct, where they interviewed

him. According to plaintiff's section 50-h hearing testimony,[1] he initially denied knowing a customer "Ms. Taylor," after which Lauler told him he was under arrest. Then, after hearing Ms. Taylor's full name, he "remembered some things" and told Lauler that he had taken a telephone order from Gwendolyn Taylor and "security was investigating the situation." Lauler's notes of the interview reveal that plaintiff stated that he took a telephone order from Ms. Taylor and that he intended to deliver the computer via shuttle service. Plaintiff was then arrested by Lauler.[2]

On March 12, 1997, Sankar signed a criminal complaint charging plaintiff with the crimes of grand larceny in the fourth degree and two counts of criminal possession of stolen property in the fourth degree. The factual allegations of the complaint alleged, inter alia, that plaintiff, a Sears cashier, typed in the credit card number of Gwendolyn Taylor to purchase an Apple computer for $2,865.36 and that according to Ms. Taylor, she did not purchase said computer nor authorize anyone to use her credit card number to make such purchase. Ultimately, however, the charges against plaintiff were dismissed at the request of the Bronx District Attorney's office.

Plaintiff commenced the instant action against Sears and the City of New York, asserting causes of action for false arrest, false imprisonment, malicious prosecution, wrongful termination, negligent investigation and intentional infliction of emotional distress. After depositions, the City's motion for summary judgment was granted by Justice Stanley Green. The court found that probable cause for plaintiff's arrest existed as a matter of law based on the information contained in the criminal complaint, which plaintiff never disputed, as well as the additional suspicion arising from the notation on the receipt that someone named Freeman would pick up the Apple computer and the coincidence that plaintiff's coworker named Al Freeman had recently been arrested for the fraudulent use of a Sears credit card.

Additionally, Justice Green explicitly rejected plaintiff's argument that an issue of fact existed as to whether Sankar had lied to the police about seeing plaintiff pick up the computer, finding the issue "immaterial" in that probable cause existed even without these statements by Sankar. This Court affirmed the grant of summary judgment to the City (*see, Brown v Sears Roebuck & Co.*, 290 AD2d 388).

---

[1]. Plaintiff testified at a hearing held pursuant to General Municipal Law § 50-h concerning his claim against former defendant the City of New York.

[2]. Plaintiff also claims that Lauler accused him of conspiring with Al Freeman during the interview.

After the City's successful motion, but prior to this Court's affirmance, Sears moved for summary judgment arguing that Justice Green's finding on the City's motion that probable cause existed was the law of the case and required dismissal of the claims against Sears. In the order appealed from, Justice Esposito granted Sears' motion in part, dismissing the claims for false arrest and false imprisonment based on the prior finding of probable cause.[3] The court, however, denied dismissal of the malicious prosecution claim on the ground that an issue of fact existed as to whether or not Sankar gave false information to the police. The court did not rule on Sears' request to dismiss the intentional infliction of emotional distress claim.

On appeal, Sears argues that the IAS court should have dismissed the malicious prosecution claim against it based on the prior judicial finding, affirmed by this Court, that probable cause existed for plaintiff's arrest. Sears further contends that plaintiff has failed to make a sufficient showing as to the other required elements of a malicious prosecution cause of action. We agree that plaintiff's cause of action for malicious prosecution fails as a matter of law.

To prevail on a malicious prosecution claim, a plaintiff must establish four elements: (1) the initiation of a criminal proceeding by the defendant against the plaintiff, (2) termination of the proceeding in favor of the accused, (3) lack of probable cause, and (4) malice. (*See, Smith-Hunter v Harvey*, 95 NY2d 191, 195; *Broughton v State of New York*, 37 NY2d 451, 457, *cert denied sub nom. Schanbarger v Kellogg*, 423 US 929; *Hoyt v City of New York*, 284 AD2d 501, 502, *lv denied* 97 NY2d 603.) Failure to establish any one of these elements defeats the entire claim (*Hoyt v City of New York*, 284 AD2d, *supra* at 502, citing *Covert v County of Westchester*, 202 AD2d 384, *lv denied* 84 NY2d 806).

Initially, Sears argues that the doctrines of law of the case and collateral estoppel bar plaintiff's malicious prosecution claim because the issue of probable cause was conclusively resolved against plaintiff in Justice Green's decision on the City's summary judgment motion, as affirmed by this Court. Of course, application of these doctrines necessarily requires an identity of issues between the earlier determination and the matter sub judice. (*See generally, Martin v City of Cohoes*, 37 NY2d 162, 165 [doctrine of law of the case provides that once an issue is judicially determined, that should be the end of the

---

**3.** Justice Esposito also dismissed plaintiff's claim for negligent investigation based on Justice Green's prior finding that New York does not recognize such cause of action, a disposition not at issue on this appeal.

matter as far as judges and courts of coordinate jurisdiction are concerned]; *Ryan v New York Tel. Co.*, 62 NY2d 494, 500 [for collateral estoppel, "(w)hat is controlling is the identity of the issue which has necessarily been decided in the prior action or proceeding"].)

Although a close question, we find these doctrines inapplicable to the instant appeal since only the City's liability for malicious prosecution, not Sears' liability, was at issue and decided in the prior determination. While plaintiff seeks to avoid issue preclusion by arguing that the standard for probable cause differs between municipalities and private entities, a proposition for which we find no support, we find the doctrines inapplicable for the more basic reason that a probable cause finding as to one entity does not compel such a finding as to the other where the facts and circumstances known to each defendant may be different. For instance, assuming, as plaintiff contends, that false information given by Sankar (a Sears employee) contributed to the detective's decision to arrest the plaintiff, in those circumstances only the City, not Sears, may be said to have acted with probable cause.

Nevertheless, upon our independent review of the merits of Sears' motion, we conclude that plaintiff has failed to raise a material issue of fact as to three of the four required elements of a malicious prosecution claim. Plaintiff argues, and the IAS court apparently agreed, that the allegedly false information provided by Sankar that he saw plaintiff pick up the computer created an issue of fact as to whether Sears initiated a criminal proceeding against him. However, it is well settled that "[t]he mere reporting of a crime to police and giving testimony are insufficient; it must be shown that defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." (*Viza v Town of Greece*, 94 AD2d 965, 966; *see also, Present v Avon Prods.*, 253 AD2d 183, 189, *lv dismissed* 93 NY2d 1032; *DeFilippo v County of Nassau*, 183 AD2d 695, 696.)

There is no evidence in this case that Sankar did anything other than provide the police with information and sign the criminal complaint at the request of the police. Such conduct by a civilian complainant is insufficient to support a claim for malicious prosecution (*Du Chateau v Metro-North Commuter R.R. Co.*, 253 AD2d 128, 131 [a civilian complainant will not be held liable for malicious prosecution by merely seeking police assistance or turning information over to law enforcement authorities, who are then free to exercise their own judgment as to whether an arrest is warranted]).

While it is true that a defendant may be said to have initiated a criminal proceeding by providing false evidence to the police or withholding evidence that might affect the determination by the police to make an arrest (*see, Viza v Town of Greece,* 94 AD2d, *supra* at 966; *Ramos v City of New York,* 285 AD2d 284, 299), the record in this case conclusively demonstrates that the allegedly false evidence provided by Sankar did not contribute to the determination to arrest plaintiff (*see, Viza v Town of Greece,* 94 AD2d, *supra* at 966 [no showing that malicious prosecution defendant initiated proceeding where merely reported crime and gave testimony; only claimed falsity related to a disputed fact which had no bearing on charges against plaintiff]).[4]

Indeed, there is no evidence in the record to support plaintiff's assertion that Lauler relied upon, or was even aware of, the allegedly false information given by Sankar to Stangenberg when he decided to arrest plaintiff. Lauler testified at his deposition that his determination to arrest was based on the information in the criminal complaint, and neither Lauler nor Stangenberg testified that Stangenberg relayed Sankar's statement about seeing plaintiff in possession of the computer to Lauler. Accordingly, given that it was solely Lauler's decision to arrest plaintiff, and no evidence exists from which it could be inferred that the determination to arrest plaintiff rested, even in part, on the allegedly false statements made by Sankar to Stangenberg, plaintiff has made no showing that Sears initiated a criminal proceeding against him.

The record likewise establishes the existence of probable cause to arrest plaintiff. Probable cause consists of such facts and circumstances as would lead a reasonably prudent person in a similar situation to believe plaintiff guilty. (*Colon v City of New York,* 60 NY2d 78, 82.) Where there is no real dispute as to the facts or the proper inferences to be drawn from such facts, the issue of probable cause is a question of law to be decided by the court. (*Parkin v Cornell Univ.,* 78 NY2d 523, 529.) At the time of plaintiff's arrest, the uncontradicted evidence showed that plaintiff's employee number appeared on the receipt for the Taylor transaction; plaintiff admitted that he entered Taylor's credit card number to effect the transac-

---

4. It is far from clear that Sankar made any false statements. Although Stangenberg testified at deposition that Sankar said he saw plaintiff in possession of the computer, this information, presumably of some significance in a larceny/stolen property case, was not reflected in any of the police reports or the criminal complaint and Sankar specifically denied making the statement.

tion; Taylor signed a statement saying that she did not purchase the computer and did not authorize anyone else to make the purchase or use her credit card; the sales receipt stated that "Gwen Taylor/Freeman" would pick up the computer; and Al Freeman, a coworker of plaintiff, had recently been arrested for fraudulent use of a credit card. This evidence easily satisfies the probable cause standard.

Nor does plaintiff's allegation of falsified evidence by Sankar vitiate the finding of probable cause (see, Gisondi v Town of Harrison, 72 NY2d 280, 285 [existence of conflicting evidence during investigation does not negate finding of probable cause, although relevant to the issue of guilt beyond a reasonable doubt at trial]). As Justice Green found, probable cause existed for plaintiff's arrest without any reference to the alleged statements made by Sankar, rendering them mere surplusage. Moreover, as indicated, since there is no evidence in the record that this evidence contributed in any way to plaintiff's arrest, it cannot undermine the probable cause finding. The existence of probable cause bars plaintiff's claims for malicious prosecution as a matter of law (see, Grant v Barnes & Noble, 284 AD2d 238, 239; Grieco v Nassau County Police Dept., 266 AD2d 262).[5]

We further conclude that the criminal proceeding against plaintiff was not terminated in his favor. "[A] plaintiff in a malicious prosecution action must show, as a threshold matter, that the criminal proceeding was *finally* terminated." (*Smith-Hunter v Harvey*, 95 NY2d, *supra* at 197.) A disposition of a criminal action "which does not terminate it but permits it to be renewed" cannot serve as the basis for a malicious prosecution action (id., quoting Prosser and Keeton, Torts § 119, at 874 [5th ed]).

Here, the case was dismissed at the request of the Bronx District Attorney's office, although the record is silent as to the reason. Thus, it is unclear whether the dismissal was based on the merits, facial insufficiency of the accusatory instrument, in the interests of justice or for some other reason. Accordingly, since the record discloses only that the District Attorney voluntarily discontinued the prosecution without any determination on the merits (see, Plataniotis v TWE-Advance/Newhouse Part-

5. Plaintiff's argument that probable cause was lacking since no evidence existed of his "actual possession" of the computer to support the larceny and stolen property charges is also rejected. Plaintiff's possession of the computer and credit card number for purposes of these crimes was sufficiently shown by his exercising dominion or control over them during the subject transaction. (See, Penal Law § 10.00 [8]; People v Jennings, 69 NY2d 103, 118.)

*nership*, 270 AD2d 627, 629), and there is no evidence that the prosecution formally abandoned charges against the accused (*see generally*, *Smith-Hunter v Harvey*, 95 NY2d, *supra* at 198), plaintiff has failed to raise an issue of fact as to termination of the proceeding in his favor.

Although the IAS court failed to rule on plaintiff's cause of action for intentional infliction of emotional distress in its summary judgment decision, this claim should also have been dismissed. Plaintiff's allegation that Sankar gave false information to the police, even if true, did not describe conduct " 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " (*Murphy v American Home Prods. Corp.*, 58 NY2d 293, 303, quoting Restatement [Second] of Torts § 46, Comment *d*; *see also*, *Howell v New York Post Co.*, 81 NY2d 115, 122; *Seltzer v Bayer*, 272 AD2d 263, 264.) Nor can plaintiff establish the element of a causal connection between Sears' conduct and his alleged injury since, as indicated, there is no evidence that Sankar's alleged false statements played any role in the determination to arrest plaintiff. Concur—Andrias, J.P., Sullivan, Friedman and Gonzalez, JJ.